**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RYAN O'DELL,<br><br>Plaintiff,<br><br>v.<br><br>KNOWBE4, INC., SJOERD SJOUWERMAN, JEREMIAH DALY, STEPHEN SHANLEY, KARA WILSON, GERHARD WATZINGER, KEVIN KLAUSMEYER, KRISH VENKATARAMAN,<br><br>Defendants. | Civil Action No. 22-cv-9727<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against KnowBe4, Inc. ("KnowBe4 or the "Company") and the members KnowBe4's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of KnowBe4 by affiliates of Vista Equity Partners Management, LLC ("Vista").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on November 14, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Oranje Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Oranje Holdco, LLC ("Parent"), will merge with and into KnowBe4 with KnowBe4 surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on October 11, 2022 (the "Merger Agreement"), each KnowBe4 stockholder will receive $24.90 in cash (the "Merger Consideration") for each KnowBe4 share owned. Parent and Merger Sub are both affiliates of Vista.

3. As discussed below, Defendants have asked KnowBe4's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to KnowBe4's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of KnowBe4 stock and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Sjoerd Sjouwerman has served as a member of the Board since 2010 and is the Company's Chief Executive Officer and Chairperson.

11. Individual Defendant Jeremiah Daly has served as a member of the Board since 2016.

12. Individual Defendant Stephen Shanley has served as a member of the Board since 2019.

13. Individual Defendant Kara Wilson has served as a member of the Board since 2020.

14. Individual Defendant Gerhard Watzinger has served as a member of the Board since 2019.

15. Individual Defendant Kevin Klausmeyer has served as a member of the Board since 2020.

16. Individual Defendant Krish Venkataraman has served as a member of the Board since 2022.

17. Defendant KnowBe4 is a Delaware corporation and maintains its principal offices at 33 N. Garden Avenue, Suite 1200, Clearwater, Florida 33755. The Company's stock trades on the NASDAQ Global Select Market under the symbol "KNBE."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. KnowBe4 engages in the development, marketing, and sale of its Software-as-a-Service-based security awareness platform. The Company provides a platform incorporating security awareness training and simulated phishing with analytics and reporting that helps organizations manage the ongoing problem of social engineering. Its products include Kevin Mitnick Security Awareness Training, a security awareness training product; Compliance Plus, a compliance training product, which enables organizations to offer their employees with relevant, timely, and engaging compliance content across a range of topics from data privacy to diversity, equity, and inclusion; PhishER, its security orchestration, automation, and response product, which enables security professionals to prioritize and automate security workstreams in response to

attacks targeted at the human layer; and KnowBe4 Compliance Manager, its governance, risk, and compliance product that enables organizations to analyze security risk and automate the management of compliance and audit functions. The Company also offers Security Coach, a solution to address human behavior risks through human detection and response; and PasswordIQ that would be used to mitigate risk related to password hygiene issues, such as weak or breached passwords. It serves its customers directly through inside sales teams for enterprise and small and medium businesses, as well as indirectly through channel partners and managed service providers. The Company was formerly known as SEQRIT, LLC and changed its name to KnowBe4, Inc. in January 2016. KnowBe4 was founded in 2010 and is headquartered in Clearwater, Florida.

21. On October 12, 2022, the Company announced the Proposed Transaction:

> TAMPA BAY, Fla.--(BUSINESS WIRE)--Oct. 12, 2022-- KnowBe4, Inc. (the "Company" or "KnowBe4") (Nasdaq: KNBE), the provider of the world's largest security awareness training and simulated phishing platform, today announced that it has entered into a definitive agreement to be acquired by Vista Equity Partners ("Vista") in an all-cash transaction valued at approximately $4.6 billion on an equity value basis.
>
> Under the terms of the merger agreement, KnowBe4 stockholders will receive $24.90 per share in cash upon completion of the proposed transaction. The per share purchase price represents a 44 percent premium to the Company's unaffected closing price on September 16, 2022, the last full trading day before Vista publicly disclosed its initial non-binding acquisition proposal on its Schedule 13-D. As disclosed by KnowBe4 in a press release dated September 19, 2022, an independent Special Committee of KnowBe4's Board of Directors (the "Special Committee") was formed to review this proposal and other potential value creation opportunities.
>
> "Today's announcement is a testament to the success of our strategy and the strength of our incredible team. This acquisition by Vista represents the next phase of our journey," said Stu Sjouwerman, founder, Chairman and Chief Executive Officer of KnowBe4. "KnowBe4 has a strong record of performance, as evidenced by our market-leading platform and global customer base. Under Vista's

ownership, we will have access to additional resources and support, which will help us achieve our goals and deliver enhanced value to our customers. We look forward to partnering with Vista's team to continue empowering businesses worldwide to strengthen their human firewall and make smarter security decisions every day."

"As a trusted partner to enterprise software companies around the world, we make a point to invest in businesses that make a difference and have a demonstrated track record of success," said Michael Fosnaugh, Co-Head of Vista's Flagship Fund and Senior Managing Director. "We look forward to leveraging our deep understanding of the business to help Stu and his talented and experienced team address the human element of cybersecurity."

"As a significant investor in KnowBe4, we could not be more excited to take this next step in our journey together," commented Rod Aliabadi, Managing Director at Vista. "We have long appreciated the work that KnowBe4 does in strengthening the human layer of cybersecurity through educating employees on how to identify social engineering and related cyber threats."

**Certain Terms, Approvals and Timing**

Under the terms of the agreement, which was unanimously approved and recommended to the Board by the Special Committee and then unanimously approved and recommended for approval by the stockholders by KnowBe4's Board of Directors, KnowBe4 stockholders will receive $24.90 in cash for each share of common stock that they own.

In connection with Vista's initial acquisition proposal, KnowBe4, under the supervision of the Special Committee and its legal and financial advisors, engaged in a robust process, including evaluating transaction alternatives against KnowBe4's standalone plan and other strategic alternatives. Following this process, the Special Committee and KnowBe4's Board of Directors each unanimously determined that the transaction with Vista is in the best interests of KnowBe4 and its stockholders.

In connection with the transaction, Vista has entered into support agreements with Mr. Sjouwerman and investment funds affiliated with KKR and Elephant Partners. Under these agreements, which collectively account for approximately 83 percent of KnowBe4's outstanding voting power, the applicable stockholders have agreed to vote all of their shares of KnowBe4 common stock in favor of the transaction, subject to certain terms and conditions contained

therein, and to roll some of their existing equity into the acquiring company or purchase equity in the acquiring company. Vista intends to finance the transaction through a combination of debt and equity financing, including the rollover and investment contemplated by the support agreements.

The transaction is expected to close in the first half of 2023, subject to customary closing conditions, including receipt of regulatory approvals and approval by KnowBe4 stockholders. The transaction is subject to approval by the holders of (i) a majority of the voting power of KnowBe4's outstanding common stock, (ii) a majority of the voting power of KnowBe4's outstanding common stock not owned by Vista, certain members of KnowBe4's management and stockholders rolling some or all of their existing equity in KnowBe4, and certain of their respective affiliates, including, but not limited to, Mr. Sjouwerman and investment funds affiliated with KKR and Elephant Partners, and (iii) a majority of the outstanding shares of each of KnowBe4's Class A common stock and Class B common stock, voting as separate classes. Upon completion of the transaction, KnowBe4's shares will no longer trade on the Nasdaq Global Select Market, and KnowBe4 will become a private company.

The foregoing description of the merger agreement and the transactions contemplated thereby is subject to, and is qualified in its entirety by reference to, the full terms of the merger agreement, which KnowBe4 will be filing on Form 8-K.

**Advisors**

Morgan Stanley & Co. LLC is serving as financial advisor to the Special Committee, Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as KnowBe4's legal advisor and Potter Anderson & Corroon is serving as the Special Committee's legal advisor.

Kirkland & Ellis LLP is serving as legal counsel and Guggenheim Securities, LLC is serving as financial advisor for Vista.

Gibson, Dunn & Crutcher LLP is serving as legal counsel to KKR, Latham & Watkins LLP is serving as legal counsel to Elephant Partners and Moulton Moore Stella LLP is serving as legal counsel to Mr. Sjouwerman.

* * *

22. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that KnowBe4's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B. The Materially Incomplete and Misleading Proxy Statement**

23. On November 14, 2022, KnowBe4 filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Proxy Statement fails to provide material information concerning financial projections by KnowBe4 management and relied upon by Morgan Stanley in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Morgan Stanley with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that KnowBe4 management provided to the Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the

most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA and Unlevered Free Cash Flow but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. The Proxy Statement fails to disclose the line items "earnings" and "interest" as used to calculate EBITDA.

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its

> usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

30. With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to disclose the financial metrics for the companies selected for the analysis.

31. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the basis for applying an aggregate value to estimated revenue multiple range of 6.0x to 9.0x; (ii) the basis for applying a price to estimated free cash flow multiple range of 30.0x to 45.0x for the Street Consensus and for the Projections; (iii) the inputs and assumptions for applying a discount rate of 12.7%; (iv) the Company's estimated cost of equity; (v) the basis for utilizing a 6% market risk premium.

32. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for KnowBe4; (ii) the inputs and assumptions underlying the range of perpetuity growth rates of 3.0% to 4.0%; (iii) the inputs and assumptions underlying the use of the range of discount rates of 11.7% to 13.7%; (iv) the Company's weighted average cost of capital; and (v) the net debt of the Company.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

33. With respect to Morgan Stanley's *Precedent Transactions Multiples Analysis*, the Proxy Statement fails to disclose the financial metrics for the transactions selected for the analysis.

34. With respect to Morgan Stanley's *Illustrative Precedent Premiums* analysis, the Proxy Statement fails to disclose the transactions reviewed and the premiums for each transaction.

35. With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to disclose the analysts observed and the corresponding price targets.

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of KnowBe4 within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of KnowBe4, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of KnowBe4, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of KnowBe4, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue

contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 15, 2022

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*